ORTEGA, P.J.
*356 Petitioner challenges an order of the Board of Parole and Post-Prison Supervision, assigning error to the board's decision to release him to parole rather than post-prison supervision (PPS). He argues that, because the aggravated murder that is the subject of his conviction occurred after the felony sentencing guidelines became effective, and because he was sentenced to a lifetime PPS term, the board erred by "modifying" the supervision term to parole upon his release from prison. We conclude that the Supreme Court has made clear that petitioner's release was to be to parole, not PPS. Accordingly, we affirm.
The procedural background in this case is long and complicated, but we do not need to recount it in detail to resolve this appeal. For our purposes, the following facts are relevant. Petitioner committed the crime of aggravated murder in 1990 when he was 15. His conviction was followed by over two decades of litigation about his sentence, the appropriate length of incarceration, and the appropriate process for his eventual release. In particular, because of his age and the sentencing laws at the time, he fell into a "small class of inmates who continued to receive indeterminate sentences" after the adoption of the sentencing guidelines. State ex rel. Engweiler v. Cook , 340 Or. 373, 381, 133 P.3d 904 (2006).
In 2011, the Supreme Court concluded that ORS 144.120(1)(a) (1989) applied to juveniles convicted of aggravated murder (like petitioner) and that it required the board to *425 conduct parole hearings for those individuals. State ex rel Engweiler v. Felton , 350 Or. 592, 596, 260 P.3d 448 (2011). After that decision, the board set petitioner's initial parole release date for February 2018. Petitioner then sought habeas corpus relief from the Supreme Court, asserting that when his "earned-time credits" were added to his credit for time served, his new release date had passed, so he was entitled to immediate release. Engweiler v. Persson/Dept. of Corrections , 354 Or. 549, 554, 316 P.3d 264 (2013). In 2013, the Supreme Court rejected petitioner's request for immediate release and held that the board was authorized to "schedule" petitioner's release for a future date after conducting a prerelease hearing under ORS 144.125(1) (providing that *357 "[p]rior to the scheduled release of any prisoner on parole *** the [board] may *** interview the prisoner" to review the prisoner's suitability for release). Id. at 567, 316 P.3d 264.
The board held a prerelease hearing and issued a decision in September 2014 that deferred parole for 45 days "to develop an adequate release plan." The order provided that "[a]t that time you will be released onto parole for life." Petitioner administratively challenged that decision, asserting that the board was required to release him to PPS. The board reviewed petitioner's request and concluded that its decision to release petitioner to parole was lawful. In large part, the board concluded that the Supreme Court's most recent decision had addressed the issue and "ruled that you are to be released on parole, not post-prison supervision." Petitioner seeks judicial review of the board's decision, arguing that the board erred by ordering him to be released on parole.
We agree with the board that the Supreme Court's most recent decision involving petitioner required the board to release petitioner on parole, not PPS. In particular, in rejecting petitioner's argument that he was not subject to an exit interview by the board under ORS 144.125(1), the Supreme Court stated:
"Plaintiff protests that the position of the petitioner in Janowski [/Fleming v. Board of Parole , 349 Or. 432, 245 P.3d 1270 (2010) ] was different in a key way: he committed his crime in 1985, before the sentencing guidelines were adopted and the parole system was replaced with post-prison supervision as the post-incarceration part of a defendant's sentence. Therefore, the petitioner in Janowski was subject to the parole regime set out in ORS 144.125. Plaintiff by contrast, committed his crime in 1990, after the sentencing guidelines were adopted. According to plaintiff, the judgment in his case correctly stated that his release, if any, would be to post-prison supervision. And, he argues, no exit interview is required before release to post-prison supervision. Plaintiff is mistaken.
"This court has repeatedly stated that plaintiff's entitlement, if any, to eventual release will be to parole."
Persson , 354 Or. at 566, 316 P.3d 264. The court then revisited some of its previous opinions addressing petitioner, noting several *358 times where the court had mentioned that petitioner, and those similarly situated to petitioner, were entitled to the possibility of parole . Id. at 566-67, 316 P.3d 264. The court summarized:
"From the foregoing, it is apparent that a necessary premise of each of this court's previous decisions involving the nature of plaintiff's sentence and his possible release depended on the conclusion that he is serving an indeterminate life sentence subject to the possibility of parole. Plaintiff has offered no persuasive analysis that would support a different understanding of his circumstances, and we perceive none."
Id. at 567, 316 P.3d 264. The court then confirmed that petitioner was subject to the requirements of ORS 144.125. Id. at 569, 316 P.3d 264.
Given the Supreme Court's explicit statement that petitioner's "entitlement, if any, to eventual release will be to parole," we reject petitioner's assertion that the Supreme Court's statements on the matter do not control. Rather, we are bound by the Supreme Court's decision on the matter until such time as that court disavows it.
*426 State v. Turner , 235 Or. App. 462, 466, 234 P.3d 993 (2010). Accordingly, we affirm the board's order.
Affirmed.